IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL P. MCDONOUGH,

Plaintiff,

v.

LEOPOLD & ASSOCIATES, PLLC,
TRINITY FINANCIAL SERVICES, LLC,

Defendants.

2:21-CV-00375-CCW

## OPINION

Before the Court is Plaintiff Michael McDonough's Motion for Class Certification. *See* ECF No. 69. Mr. McDonough's Motion has been fully briefed and is ripe for disposition. For the reasons set forth below, Mr. McDonough's Motion will be DENIED.

## I.     Background

Mr. McDonough is a Pennsylvania resident who took out a mortgage from PNC Bank in 2004 related to a residential property located near Pittsburgh. *See* ECF No. 24 ¶¶ 10–11, 45–46. Defendant Trinity Financial Services, LLC ("Trinity") is a debt collector. *See id.* ¶¶ 29–30. Defendant Leopold & Associates, PLLC ("Leopold") is a New York law firm that allegedly sent debt collection communications on behalf of Trinity to Mr. McDonough. *See id.* ¶¶ 13, 30, 36, 57–60.

In short, Mr. McDonough claims that Trinity and Leopold violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), by sending him a debt collection letter (the "Letter") and other communications that falsely and deceptively threatened that Defendants would initiate foreclosure proceedings and would sue Mr. McDonough personally for

any unpaid principal, despite the statute of limitations for any such legal actions having already expired. *See id.* ¶¶ 56–73. Mr. McDonough also alleges that the Letter suffered from various other technical deficiencies. *See* ECF No. 70 at 1–2 (Mr. McDonough's brief in support of his Motion, explaining that "[t]he Complaint similarly alleges that Defendants failed to effectively communicate Plaintiff's 'validation rights' by indicating that written disputes should be directed to Trinity, rather than to Leopold. Even if this were not improper—it is—the Letter fails to provide an address for Trinity to which such disputes are to be sent. It is also alleged that the Letter would be confusing to the extent that it includes a second validation notice which contradicts the first; and also fails to state the amount of the debt.").

Mr. McDonough now seeks certification of a Rule 23 class, including one sub-class, defined as follows in his Motion:

> Class: "the two hundred and four (204) consumers in the State of Pennsylvania who received a collection letter issued by Leopold on behalf of Trinity, similar to that sent by Leopold to Plaintiff which: (i) falsely advised that Trinity could commence a foreclosure action on a time-barred debt; (ii) falsely advised the consumer to send requests for validation to Trinity, rather than to Leopold; (iii) failed to provide a clear an[d] accurate statement of the consumer's validation rights; (iv) failed to clearly and accurately state the amount of the debt allegedly owed; (v) failed to clearly and accurately state what "other charges" may be included in the demand for payment; and (vi) failed to clearly and accurately provide the address to which written disputes are to be sent by the consumer.

> Plaintiff also seeks to certify a subclass of consumers who actually made payment to either Trinity or Leopold in reliance on the false representation in the collection letter(s) indicating that Trinity could lawfully commence a foreclosure action when, in fact, such action was time-barred.

ECF No. 69 ¶ 3.

In support of his Motion, Mr. McDonough has submitted: (1) a declaration from his attorney, Craig Sanders, attesting to Mr. Sanders' experience and skill to support his appointment as class counsel, *see* ECF No. 69-2; (2) a declaration from Mr. McDonough, in support of his appointment as class representative, *see* ECF No. 69-4; and (3) a copy of Trinity's responses to

Mr. McDonough's interrogatories.  *See* ECF No. 69-3.  As relevant here, those interrogatory responses establish that Trinity placed some 204 Pennsylvania mortgage accounts with Leopold and that Trinity currently owns 191 defaulted mortgages in Pennsylvania.  *See* ECF No. 69-4 at 4–5.

## II.    Standard of Review

A lawsuit may only be certified as a class action if the requirements of Federal Rule of Civil Procedure 23 are satisfied.  *See Reinig v. RBS Citizens, N.A.,* 912 F.3d 115, 124 (3d Cir. 2018) (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011)).  In general, "[c]ourts determine whether class certification is appropriate by conducting a two-step analysis." *Id.* at 124–25.  First, the court must assess whether plaintiff has satisfied the prerequisites of Rule 23(a), and then it must determine whether plaintiff has met the requirements of either Rule 23(b)(1), (2), or (3).  *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 248 (3d Cir. 2016) (quoting *Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 590 (3d Cir. 2012)).

In order to satisfy Rule 23(a), plaintiff must show:

> (1) the class is so numerous that joinder of all members is impracticable;  (2) there are questions of law or fact common to the class;  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;  and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4).  Here, Mr. McDonough seeks certification under Rule 23(b)(3), *see* ECF No. 69, which requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Finally, "[a]scertainability functions as a necessary prerequisite (or implicit requirement) because it allows a trial court effectively to evaluate the explicit requirements of Rule 23";  accordingly, a plaintiff seeking class certification under Rule 23(b)(3) must also establish

that the proposed class is "ascertainable," meaning that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162–63 (3d Cir. 2015) (citing *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)).

Importantly, "the decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met.'" *In re Modafinil*, 837 F.3d at 248–49 (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008)). Accordingly, in resolving a motion for class certification under Rule 23, the district court "'must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action.'" *Id.* at 249 (quoting *In re Hydrogen Peroxide*, 552 F.3d at 307). Therefore, "[c]lass certification is proper only if the district court is satisfied, 'after a rigorous analysis,' that the plaintiffs 'established each element of Rule 23 by a preponderance of the evidence.'" *Reinig*, 912 F.3d at 125 (quoting *Marcus*, 687 F.3d at 591)).

## III.    Discussion

### A.    Mr. McDonough Has Standing to Pursue His Claims

As a threshold matter, both Defendants argue that Mr. McDonough lacks Article III standing to pursue the claims alleged in the Amended Complaint, whether on an individual or class basis. *See* ECF No. 77 at 5 (noting, in challenging commonality, that there is no evidence Mr. McDonough suffered an "actual, particularized injury"); ECF No. 78 at 5–9 (challenging standing). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560 (1992)).  To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id*. (citing *Lujan*, 504 U.S. at 560–61).  Here, Defendants challenge only the first standing requirement—i.e., whether Mr. McDonough suffered any injury in fact as a consequence of Defendants' allegedly misleading Letter.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id*. at 339 (quoting *Lujan*, 504 U.S. at 560).  For an injury to be particularized, it must "affect the plaintiff in a personal and individual way."  *Id*. (citation omitted). "Concrete," although not "necessarily synonymous with 'tangible,'" means that the injury is "'real' and not 'abstract.'"  *Id*. at 340.  Recently, in *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021), a class action under the Fair Credit Reporting Act, the Supreme Court further elaborated on the injury-in-fact requirement in the context of statutorily created causes of action, finding that,

> [W]ith respect to the concrete-harm requirement in particular, this Court's opinion in *Spokeo v. Robins* indicated that courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts.  [*Spokeo*,] 578 U.S. at 341.  That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury.  *Spokeo* does not require an exact duplicate in American history and tradition.

141 S.Ct. at 2204.  Thus, while "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law'…'it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is."  *Id.* at 2204–05 (citations omitted).  Applying these principles, the Court in *TransUnion* concluded that certain class members could satisfy the concrete harm requirement because defendant had disseminated false or incorrect information about them to third-party creditors.  Standing was lacking, however, with respect to plaintiffs for whom

defendant only possessed—but did not disseminate—false information.  In short, because the closest analogue for the FCRA claim at issue identified by the Court was defamation, the Court's concrete harm inquiry turned on whether false or misleading information had been "published" by defendant.

Neither the Supreme Court nor the Third Circuit has applied the holding from *TransUnion* to a claim for false/misleading debt collection communications under the FDCPA.  Some district courts in the Third Circuit, analogizing a claim for false and/or misleading debt collection communications under the FDCPA to a common law fraud claim, have found standing lacking where plaintiff could not demonstrate that he or she detrimentally relied on the allegedly false or misleading communication.  *See, e.g.*, *Schultz v. Midland Credit Mgmt.*, 2022 U.S. Dist. LEXIS 134993, at *8–11 (D.N.J. July 29, 2022).   Other district courts, however, have concluded that standing exists by virtue of plaintiff's receipt of false or misleading debt collection communications.  *See Butela v. Midland Credit Mgmt.*, Civil Action No. 2:20-cv-1612, 2022 U.S. Dist. LEXIS 76602, at *5 (W.D. Pa. Apr. 27, 2022) (Stickman, J.) ("[Plaintiff] has alleged that he suffered an injury in fact from [defendant's] materially false, misleading, and deceptive communication.  This informational injury, though intangible, satisfies the first requirement of Article III standing because it constitutes an invasion of a debtor's legally protected interest in truthful information under the FDCPA and is sufficiently actual, concrete, and particularized."); *see also Ozturk v. Amsher Collection Servs.,* Civil Action No. 21-18317, 2022 U.S. Dist. LEXIS 91078, at *10 (D.N.J. May 20, 2022) ("In sum, the courts in this district routinely find that alleging that a debt collector has provided (and the debtor has subsequently consumed) false information concerning the collection of a debt is a 'substantive, and not merely procedural, statutory right under the FDCPA' that confers Article III standing").

The Court agrees with the reasoning of those district courts that have found standing and, consequently, concludes that standing exists here. The FDCPA was specifically enacted "to eliminate abusive debt collection practices by debt collectors" because "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692. Given this purpose, courts—including both the Third and Second Circuit Courts of Appeals—have recognized that "'the FDCPA enlists the efforts of sophisticated consumers . . . as "private attorneys general" to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.'" *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008)).

Framed as such, the FDCPA is not solely aimed at combatting fraud-like conduct, but also is intended to curb harassment and abuse by debt collectors more generally. As such, because the FDCPA targets a range of abusive debt collection practices, common law fraud may be only one of a few potential analogues for purposes of determining standing. That is, without further guidance from either the Supreme Court or the Third Circuit, this Court is unwilling to conclude that detrimental reliance on a false or misleading debt collection communication is a necessary prerequisite for a plaintiff to demonstrate standing in a case like this one.

Furthermore, the FDCPA claims here—namely, that Mr. McDonough received deceptive debt collection communications from Defendants—are distinguishable from the claims at issue in *TransUnion*. There, the Supreme Court, in holding that one group of plaintiffs lacked standing, drew a sharp distinction between "(i) credit files that consumer reporting agencies maintain

internally and (ii) the consumer credit reports that consumer reporting agencies disseminate to third-party creditors." 141 S.Ct. at 2210. As to the former:

> The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm. In cases such as these where allegedly inaccurate or misleading information sits in a company database, the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is.

*Id.* Here, on the other hand, the Letter *was* sent to and read by Mr. McDonough. And, as found by Judge Stickman, "[t]his informational injury, though intangible, satisfies the first requirement of Article III standing because it constitutes an invasion of a debtor's legally protected interest in truthful information under the FDCPA and is sufficiently actual, concrete, and particularized." *Butela*, 2022 U.S. Dist. LEXIS 76602, at *5. In other words, whereas merely maintaining a database with false information amounts to nothing more than a bare procedural violation under the FCRA and *TransUnion*, Mr. McDonough here alleges Defendants affirmatively reached out and invaded his legally protected interest in receiving non-deceptive debt collection communications. While an invasion of that interest may have been "previously inadequate at law," Congress has nevertheless "elevate[d] [it] to the status of [a] legally cognizable injur[y]." *TransUnion*, 141 S.Ct. at 2204.

Accordingly, the Court concludes that Mr. McDonough has sufficiently alleged injury in fact such that standing exists here. Finally, the Court need not examine whether any putative class members lack standing at this juncture because it is well-established in this Circuit that, at the certification stage, only the named plaintiff (or plaintiffs) need establish standing. *See Neale v. Volvo Cars of North America, LLC,* 794 F.3d 353, 362 (3d Cir. 2015) ("We now squarely hold that unnamed, putative class members need not establish Article III standing. Instead, the 'cases

or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class.").

**B.** **Class Certification Will Be Denied Because Mr. McDonough Has Failed to Establish that the Class Is Sufficiently Numerous**

A plaintiff satisfies Rule 23(a)'s numerosity requirement if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no minimum number of class members required to meet the numerosity requirement, our Court of Appeals has said that "'generally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249–250 (3d Cir. 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)).

Here, Trinity's interrogatory responses establish that Trinity placed "up to 204 accounts with mortgages in Pennsylvania" with Leopold for collection. ECF No. 69-3 at 5. Trinity's interrogatory responses also establish that Trinity "currently owns 191 defaulted mortgages" in Pennsylvania. *Id.* at 4. However, "Trinity is unable to determine how many of these accounts actually received" a copy of the Letter from Leopold. *Id.* at 5.

Mr. McDonough's evidence, at first glance, appears to clear the relatively "low hurdle" necessary to establish numerosity. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (quoting *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1267 (11th Cir. 2009)). However, closer inspection shows that Mr. McDonough has not demonstrated that the numerosity requirement is met here. Key to Mr. McDonough's claims in this case—and the class and subclass he seeks to have certified here—is the allegation that the statute of limitations applicable to the underlying debt had run as of the time Defendants sent the Letter. And while the record evidence shows that Trinity placed with Leopold some 200 accounts with Pennsylvania mortgages, there is no evidence whatsoever that the statute of limitations applicable to any of those mortgages had run

9

by the time Leopold sent a copy of the Letter to a given debtor.  Furthermore, although alleged to be a form letter, there is no evidence in the record presently before the Court to support either the conclusion that (1) the Letter is, in fact, a form correspondence or (2) that the alleged technical violations—misstatement of the amount of the debt and improper validation notice—were also present in letters sent to putative class members.

Mr. McDonough's response to a related argument by Leopold as to whether the proposed class is ascertainable highlights Mr. McDonough's lack of evidence as to the number of time-barred debts potentially at issue.  Mr. McDonough asserts that the proposed class is ascertainable because "one would only need to look at the default date set forth in the letters themselves and compare those dates with the dates on which the letters were sent to determine if the alleged debts were time-barred at the time the letters were sent." ECF No. 84 at 4.  In effect, Mr. McDonough is inviting the Court to engage in the kind of "certify-first-ask-questions-later" approach to class certification that both Rule 23 and our Court of Appeals soundly reject.  *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 907 (3d Cir. 2022) (Porter, J., concurring) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318–19 (3d Cir. 2008)).

The void in Mr. McDonough's evidence as to numerosity becomes even clearer when considering Mr. McDonough's proposed subclass.  A proposed subclass must independently meet the requirements of Rule 23 in order to be certified.  *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); *see also Fanty v. Com. of Pa., Dep't of Pub. Welfare*, 551 F.2d 2, 7 n.4 (3d Cir. 1977) ("This means that each subclass must independently meet the requirements of Rule 23 for maintenance of a class action.").  Mr. McDonough's proposed subclass would consist of the subset of debtors who, after receiving Defendants' Letter, made a payment on their time-barred debt.  But, Mr. McDonough

(who did not make any payment in response to the Letter) has presented no evidence—direct or circumstantial—from which the number of such individuals could be inferred.

In sum, class certification cannot be premised on speculation, and, with respect to the number of potential class and subclass members, that is all that is on offer here. *See Marcus*, 687 F.3d at 596 ("As we explained in *Hydrogen Peroxide*, a district court must make a factual determination, based on the preponderance of the evidence, that Rule 23's requirements have been met…. Mere speculation is insufficient.") (citations omitted). According to the Third Circuit, although Rule 23(a)(1) does not require direct evidence of the precise number and exact identity of class members, "in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding. Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." *Id.* (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 468, 510 (D.N.J. 1997), *aff'd* 148 F.3d 283 (3d Cir.1998) (finding numerosity requirement satisfied without pinpointing an exact number because the evidence suggested a class of over 8,000,000 policyholders and "[c]ommon sense suggest[ed] that it would be at best extremely inconvenient to join all class members"). Mr. McDonough, therefore, has failed to meet his burden to demonstrate by a preponderance of the evidence that either the proposed class or the proposed subclass "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013) (finding plaintiff failed to satisfy numerosity requirement and noting that "where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone.") (citing *Vega*, 564 F.3d at 1267). Accordingly, Mr. McDonough's Motion will be DENIED.

**IV.    Conclusion**

For the reasons set forth above, Mr. McDonough's Motion for Class Certification, ECF No. 69, will be DENIED.

DATED this 22nd day of August, 2022.

BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):

All Counsel of Record