IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL P. MCDONOUGH,

        Plaintiff,

    v.

LEOPOLD & ASSOCIATES, PLLC,
TRINITY FINANCIAL SERVICES, LLC,

        Defendants.

**2:21-CV-00375-CCW**

## <u>OPINION</u>

Before the Court are cross-motions for summary judgment filed by Plaintiff Michael P. McDonough, ECF No. 169, Defendant Trinity Financial Services, LLC ("Trinity"), ECF No. 164, and Defendant Leopold & Associates, PLLC ("Leopold"), ECF No. 166. Mr. McDonough asserts that Trinity and Leopold improperly attempted to a collect a time-barred debt, and made misrepresentations and omissions, in violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692. ECF No. 144. Defendants respond that Mr. McDonough lacks Article III standing and that their collection efforts were lawful. For the reasons set forth below, the Court will **GRANT IN PART AND DENY IN PART** the parties' Motions.

## I.    Background

The following facts are undisputed unless otherwise noted.

In or about 2001, Mr. McDonough purchased a house at 948 Broadmeadow Drive in Pittsburgh, Pennsylvania which was financed by a mortgage. ECF Nos. 173 ¶ 4, 181 ¶ 4, 191 ¶ 4, 165 ¶¶ 1–3, 186 ¶¶ 1–3. The house was and is the primary residence for Mr. McDonough and his family. ECF Nos. 173 ¶ 5, 181 ¶ 5, 191 ¶ 5. On March 22, 2004, Mr. McDonough took out a

Home Equity Line of Credit with PNC Bank with a maximum credit limit of $36,000 (the "HELOC").[1]  ECF Nos. 164-2 at 5, 173 ¶ 7, 181 ¶ 7, 191 ¶ 7.  On the same date, Mr. McDonough entered into an Open-End Mortgage with PNC Bank wherein his house secured the HELOC (the "Mortgage").  ECF Nos. 164-2 at 3–4, 165 ¶ 9, 186 ¶ 9.  On September 25, 2018, PNC Bank assigned the Mortgage to US Mortgage Resolution LLC.  ECF Nos. 165 ¶ 10, 186 ¶ 10.  In July 2019, US Mortgage assigned the Mortgage to Defendant Trinity.[2]  ECF Nos. 165 ¶ 11, 186 ¶ 11, 173 ¶ 53, 181 ¶ 53.  Trinity disputes that it is a "debt collector," but does not dispute that it "obtains negotiable documents regarding outstanding financial obligations owed to others."  ECF Nos. 144 ¶ 19, 149 ¶ 19.

In July 2019, Trinity retained Defendant Leopold, a law firm, to recover on the Mortgage and to initiate foreclosure proceedings on the Mortgage, if necessary.  ECF Nos. 165 ¶ 23, 168 ¶ 2, 186 ¶ 23, 190 ¶ 2, 172-2 at 3.  Leopold drafted and mailed a letter to Mr. McDonough dated September 24, 2019 (the "Letter").  ECF Nos. 165 ¶ 24, 186 ¶ 24.  At its core, the Letter threatened to initiate foreclosure proceedings on the Mortgage unless Mr. McDonough paid a curative amount of $22,162.20 within thirty-five days.  ECF No. 164-3.  At the time Trinity acquired the Mortgage and at the time Leopold sent the Letter, Trinity was not licensed as mortgage servicer under the Pennsylvania Mortgage Licensing Act.[3]  ECF Nos. 173 ¶ 55, 181 ¶ 55.  Trinity acquired its license to act as a mortgage servicer on July 31, 2020.  ECF Nos. 173 ¶ 54, 181 ¶ 54.

---

[1] Mr. McDonough asserts that the HELOC was in the amount of $30,000, and Trinity did not dispute this fact.  ECF No. 181 at ¶ 7.  However, Leopold notes that the HELOC states that it is for a maximum amount of $36,000.  Based on a review of the HELOC, the Court agrees with Leopold.  ECF No. 191 at ¶ 7, 171-1 at 4.  In any event, the exact amount of the HELOC is not material to the Court's decision.

[2] Trinity has stated that it acquired the HELOC and the Mortgage on two different dates, however they are both in July 2019.  *Compare* ECF Nos. 165 ¶ 11, 186 ¶ 11 (acquisition on July 14, 2019), *with* ECF Nos. 173 ¶ 53, 181 ¶ 53 (acquisition on July 24, 2019).

[3] 7 Pa. C.S. § 6101 *et seq.*

The parties agree that Mr. McDonough made his last payment towards the outstanding balance on the HELOC on or about November 22, 2007.  ECF Nos. 165 ¶ 29, 186 ¶ 29.  However, the parties disagree about what transpired before the last payment date, and what transpired between the last payment date and the date of the Letter, September 24, 2019.  Mr. McDonough has provided a sworn declaration[4] averring the following:  he made timely payments on the HELOC for approximately two years, ECF No. 173 ¶ 9;  he defaulted in making payments on the HELOC as of October 2006, *id.* ¶ 10;  at some time between December 2006 and February 2007, PNC Bank declared the HELOC to be in default and either sold the HELOC to another entity or otherwise referred the HELOC to collections, *id.* ¶ 11;  in March 2007, Mr. McDonough was contacted by an entity other than PNC Bank with respect to the HELOC and worked out an agreement to cure the default and restore the HELOC to good standing, *id.* ¶¶ 12–13;  Mr. McDonough then made several payments but later defaulted, *id.* ¶¶ 14–15;  on or about May 31, 2007, as a result of Mr. McDonough's default, PNC accelerated and charged off the HELOC, *id.* ¶¶ 15–16;  and Mr. McDonough was not contacted by PNC or any entity claiming to be acting on behalf PNC for at least the next decade, notwithstanding the default, *id.* ¶ 17.  Trinity and Leopold dispute Mr. McDonough's statements regarding his payments on the HELOC, the loan history, and that the HELOC and Mortgage were accelerated.  *See* ECF Nos. 181 ¶¶ 10–21;  ECF No. 191 ¶¶ 10–21.

---

[4] Trinity objects to the declarations Mr. McDonough submitted in support of his Motion, ECF No. 171, and in opposition to Trinity's Motion, ECF No. 188.  ECF Nos. 180, 197.  Specifically, Trinity asks the Court to disregard the declarations of Mr. McDonough and his counsel under the sham affidavit doctrine and to strike documents attached to the declarations.  ECF No. 180 at 4–17.  The Court agrees with Mr. McDonough that the sham affidavit doctrine is inapplicable here.  The Court's review of the record demonstrates that the declarations do not conflict with Mr. McDonough's prior testimony, and many facts that Trinity objects to were pled in the Second Amended Complaint.  Further, Mr. McDonough can present the testimony at trial in a form that would be admissible, therefore any alleged hearsay evidence produced at summary judgment may be considered.  *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).  Accordingly, Trinity's objections are overruled.

The parties have now filed cross-motions for summary judgment. Mr. McDonough contends that he has Article III standing and is entitled to judgment on his claims that Trinity's and Leopold's threat of foreclosure in the Letter was false and deceptive because, at the time Leopold sent the Letter, the statute of limitations of the HELOC had expired and Trinity was not licensed to act as a mortgage servicer in Pennsylvania. ECF No. 170. Mr. McDonough seeks a $1,000 statutory award of damages under the FDCPA and to have a trial on his alleged actual damages. *Id.* Trinity and Leopold both move for summary judgment on all of Mr. McDonough's claims, arguing that Mr. McDonough lacks Article III standing for any of his claims, that Trinity had a valid right to foreclose on the Mortgage, and that Mr. McDonough's other FDCPA claims fail as a matter of law. ECF Nos. 164, 167.

## II.    Summary Judgment Legal Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (alteration omitted) (quoting *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'"

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996).  Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'"  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87 (internal quotation marks omitted) (finding that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.").  Thus, while "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).  But while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal quotation marks omitted).  Instead, "there must be evidence on which the jury could reasonably find for the non-movant."  *Id.* (cleaned up).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial."

*Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

"Where, as here, cross-motions for summary judgment are filed, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, Civil Action No. 19-2184, 2020 WL 2404904, at *3 (E.D. Pa. May 12, 2020) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

## III.   Legal Analysis

The Court will first determine whether Mr. McDonough has Article III standing for each of his claims.  The Court will then turn to the merits of any remaining claims.

### A.   Standing

#### 1.   Legal Standard

The standing doctrine, in Article III, section 2 of the Constitution, limits the judicial power of the United States to "Cases" and "Controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  Thus, federal courts may "resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Am. Legion v. Am. Humanist Assn.*, 139 S. Ct. 2067, 2103 (2019)).  A "real controversy" exists where the plaintiff (1) has suffered an "injury in fact," (2) that is "fairly traceable" to the defendant's challenged conduct, and (3) is "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.  If any of these elements is missing, then there is no case or controversy, and the court lacks jurisdiction over the matter. *Lujan*, 504 U.S. at 560–62.

"The party invoking federal jurisdiction bears the burden of establishing [Article III standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. at 561.  And it must do so "with the manner and

degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Thus, at the summary judgment stage, a party "can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts establishing standing." *Greenberg v. Lehocky*, 81 F.4th 376, 384 (3d Cir. 2023). Further, at this stage, the plaintiff's "specific facts" will be "taken to be true." *Lujan*, 504 U.S. at 561; *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 377 (W.D. Pa. 2020) (Ranjan, J.) ("[O]n summary judgment, [plaintiffs] must come forward with proof of injury, taken as true, that will prove standing, including a concrete injury-in-fact."). A party "must demonstrate standing for each claim . . . and for each form of relief they seek." *TransUnion*, 141 S. Ct. at 2208.

### 2. Article III Standing Exists for Some, But Not All, of Mr. McDonough's FDCPA Claims

Here, Mr. McDonough has the burden of proving Article III standing because he commenced this action in federal court. *See* ECF No. 1. The parties dispute whether he can satisfy the injury-in-fact requirement.

### a. Mr. McDonough has Standing for Count 1

Mr. McDonough's first FDCPA claim asserts that Leopold and Trinity violated §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10). Section 1692e generally prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with collecting a debt. The sub-sections prohibit certain more specific practices. Mr. McDonough contends that the Letter violated § 1692e and the identified sub-sections by falsely threatening an action that could not be taken, namely foreclosure where the debt is time-barred, and that Trinity was not a licensed mortgage servicer and therefore could not collect payments or foreclose on the Mortgage. ECF No. 144 ¶¶ 124-135. Relevant to Count 1, the Letter states the following:

**<u>NOTICE OF INTENTION TO FORECLOSE ON MORTGAGE</u>**

The Mortgage held by Trinity on your property… IS IN SERIOUS DEFAULT…The total amount now required to cure this default and to catch up with your outstanding missed payments as of the date of this letter is $22,162.20.

*\*\*\**

If you do not cure this default within THIRTY FIVE (35) DAYS, Trinity may also state a lawsuit to foreclose on your mortgaged property, [] BROADMEADOW DR, PITTSBURGH, PA 15237.  If the mortgage is foreclosed your mortgage property will be sold by the Sherriff to pay the mortgage debt.

*\*\*\**

If you are unable to bring your account current, I urge you to call Trinity immediately to discuss possible alternatives to foreclosure.

ECF No. 164-3 at 3, 4, 5.

The Court finds that Mr. McDonough has Article III standing for this claim.  An injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338 (cleaned up).  To satisfy this element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).  To satisfy the concrete-harm requirement, the plaintiff must have suffered an injury that bears a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (internal quotations omitted).  Some tangible harms, such as physical injuries or monetary losses, "readily qualify as concrete injuries." *Id.* at 425.  Intangible harms can also qualify as concrete injuries under Article III, but they must be closely related to traditional harms, such as reputational harms, disclosure of private information, and intrusion upon seclusion. *Id.*  Therefore, a party invoking federal jurisdiction must show there is a "close historical or common-law analogue" to the harm, although an "exact duplicate" is not required.  *Huber v. Simon's*

*Agency, Inc.*, 84 F.4th 132, 147–48 (3d Cir. 2023). Furthermore, not only must there be a statutory analogue, but the plaintiff's harm must bear "a sufficiently close relationship to the harm from [that common-law action]." *Id.* (emphasis in original).

Courts have found that claims for misleading communications under the FDCPA are related to the historical tort of fraudulent misrepresentation. *Huber*, 84 F.4th at 148. But to establish standing, the mere showing of a deceptive or misleading communication is insufficient; instead, there must be "some cognizable harm that flows from that confusion." *Id.* at 149. A plaintiff must demonstrate a reliance on the misleading statement to analogize to the tort of fraudulent misrepresentation.

As to Count 1, Mr. McDonough argues that he has common law analogues of harm, specifically fraudulent misrepresentation and intentional infliction of emotional and physical harm due to the threats of foreclosure. ECF No. 185 at 16–20. Almost twelve years after his last payment on the Mortgage and last communication from anyone regarding the Mortgage, Trinity and Leopold represented that Trinity could commence foreclosure proceedings against Mr. McDonough in thirty-five days. Mr. McDonough submitted an affidavit, which the Court takes as true, that he experienced harm from the Letter, including suffering from stress, feeling confused, marital instability, and abandoning plans to sell or otherwise move from the house due to the threat of foreclosure. ECF Nos. 171 at ¶ 27 ("I was in emotional turmoil and horribly anxious from the overt threat in the Letter of having my home taken away from me."), ¶ 46 ("[T]he Letter caused me to abandon my plans to sell the house until I could sort out the details of what, if anything, I supposedly owe Trinity."); 188 at ¶ 3 ("I suffered great anxiety, sleepless nights, and dangerously high blood pressure directly related to the threats of foreclosure set forth in the Letter."). The Court finds that Mr. McDonough's abandonment of plans to sell his home due to the threat of

foreclosure is harm flowing from the Letter such that Mr. McDonough's reliance on the Letter is sufficiently similar to that of the tort of fraudulent misrepresentation. *Huber*, 84 F.4th at 148–49. The Court further finds that Mr. McDonough's averments of emotional turmoil, anxiety, sleepless nights, and dangerously high blood pressure, are harms flowing from the Letter that are sufficiently similar to the tort of intentional infliction of emotional distress.[5]  *Lezark v. I.C. System*, Civ. A. No. 2:20-cv-403, 2023 WL 4571457, at *8 (July 18, 2023) (Wiegand, J.).  Therefore, the Court concludes that Mr. McDonough has Article III standing for Count 1.

### b.      Mr. McDonough Lacks Standing for Count 2

Mr. McDonough's second FDCPA claim asserts that Leopold and Trinity violated §§ 1692g(b), 1692e, and 1692e(10).  Section 1692g(a) requires debt collectors to advise consumers that within thirty days after receipt of the notice pursuant to that section, they may dispute the validity of the debt or request the name and address of the original creditor, if different from the current creditor.  Relatedly, § 1692g(b) requires the debt collector to cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or provides the requested information.  "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  § 1692g(b).  A validation notice is overshadowed where it makes a consumer uncertain as to his validation rights.  *See Wilson v. Quadramed Corp.*, 225 F.3d 350, 357 (3d Cir. 2000).

---

[5] Mr. McDonough has not provided any case law supporting marital instability as a basis for standing under the FDCPA.  Rather, every case he cites involves marital stability as a basis for the passing of the FDCPA, not a harm sufficient to confer standing.  Neither marital instability nor confusion, alone, are sufficient to confer standing here. *Huber*, 84 F.4th at 149 ("[C]onfusion, without more, is not a concrete injury.").

Mr. McDonough contends that Trinity and Leopold violated § 1692g(b) because the Letter's threat of foreclosure overshadowed Mr. McDonough's right to validate or dispute the debt, and to request the name and address of the original creditor. Specifically, Mr. McDonough argues that even if he exercised his validation rights, he could nevertheless face foreclosure. ECF No. 144 ¶¶ 137–73. Mr. McDonough does not clearly delineate his basis for standing on this claim, and the Court finds that it lacks standing. Courts have treated overshadowing claims under the FDCPA as related to the historical tort of fraudulent misrepresentation. *Rabinowitz v. Alltran Fin. LP*, Civ. A. No. 21-12756, 2022 WL 16362460, at *9 (D.N.J. Oct. 25, 2022). However, here, there is no evidence that Mr. McDonough relied on the alleged overshadowing or that any harm flowed from receipt of the Letter on this basis. While Mr. McDonough alleges that he suffered stress and anxiety in response to the Letter, he represented that those harms resulted from the threat of foreclosure, as opposed to from any alleged overshadowing. ECF No. 188 at ¶ 3 ("I suffered great anxiety, sleepless nights, and dangerously high blood pressure *directly related to the threats of foreclosure set forth in the Letter.*") (emphasis added). Therefore, the Court finds that Mr. McDonough lacks Article III standing for Court 2, and the claim will be dismissed.

### c.      Mr. McDonough Lacks Standing for Count 3

Mr. McDonough's third FDCPA claim asserts that Leopold and Trinity violated § 1692g(a)(5). Section 1692g(a)(5) requires the debt collector to include a validation notice to the consumer "that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." There is a compliant validation notice from Leopold accompanying the Letter. ECF No. 164-3 at 7. However, Mr. McDonough contends that there is also a validation notice from Trinity, in the body of the Letter, but that the notice from Trinity is insufficient because

Trinity failed to include the required language from § 1692g(a)(5).  Specifically, Trinity does not state it would "provide [Mr. McDonough] with the name and address of the original creditor, if different from the current creditor," upon request within the thirty-day period.  ECF No. 144 ¶¶ 175–85.  Relevant to Count 3, the Letter states the following:

> Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this letter, the debt will be assumed to be valid by Trinity.  If you notify Trinity within thirty (30) days that the debt or a portion of the debt is disputed, Trinity will send you verification of the debt.  If you would like to obtain such verification, direct your request in writing to Trinity within thirty (30) days.  The failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.

ECF No. 164-3 at 4.

The Court agrees with Trinity and Leopold that Mr. McDonough lacks Article III standing for this claim.  Mr. McDonough argues that he has standing because he suffered an informational injury due to Defendants' failure to include the required language from § 1692g(a)(5) as to Trinity on page two of the Letter.  An informational injury exists where the plaintiff was denied information to which she was legally entitled, and the denial caused adverse consequences related to the purpose of the statute.  *Kelly v. RealPage Inc.*, 47 F.4th 202, 212 (3d Cir. 2022).  To constitute an informational injury, there must be an outright omission of information;  unclear or ineffective disclosures do not create an injury.  *Huber*, 84 F.4th at 146 (finding no informational injury where the debtor disclosed the amount of debt owed);  *see also TransUnion*, 594 U.S. at 440–42 (finding no informational injury where a credit reporting agency omitted certain required information in its initial mailings to plaintiff but later sent the required information in a separate mailing).

Here, Mr. McDonough has not identified any statutory or other source that required *Trinity* to provide the validation notice in § 1692g(a)(5).  As Mr. McDonough concedes, he was only legally entitled to receive the language in § 1692g(a)(5) from Leopold, and not from Trinity, because Leopold sent the Letter.  ECF No. 189 at 20–21 ("[T]he notice directs Plaintiff to address any such request to Trinity, rather than Leopold, *whereas the plain language of § 1692g(a)(5) imposed the obligation on Leopold, not on Trinity*.").  Therefore, Mr. McDonough cannot have standing on the basis of an informational injury because there is no information that he was legally entitled to receive that he did not for this claim.  *Elansari v. Meta, Inc.*, No. 22-3060, 2024 WL 163080, at *2 (3d Cir. Jan. 16, 2024) (finding lack of standing under informational injury doctrine because "entitlement to the information allegedly withheld is the *sine qua non* of the informational injury doctrine"); *Kelly v. RealPage Inc.*, 47 F.4th at 213  ("[A] plaintiff seeking to assert an informational injury must establish a nexus among the omitted information to which she has entitlement, the purported harm actually caused by the specific violation, and the 'concrete interest' that Congress identified as 'deserving of protection' when it created the disclosure requirement.").  Accordingly, Mr. McDonough lacks Article III standing for Count 3, and the claim will be dismissed.[6]

### d.    Mr. McDonough Lacks Standing for Count 4

Mr. McDonough's fourth FDCPA claim asserts that Defendants violated §§ 1692g(a)(4) and 1692g(a)(5).  Both sections 1692g(a)(4) and 1692g(a)(5) require consumers to make any disputes or requests for the original creditor's name and address in writing.  Mr. McDonough

---

[6] Mr. McDonough contends that the Letter violates § 1692g because it directs him to contact Trinity *and* Leopold to dispute the debt.  However, Mr. McDonough asserts this argument in relation to three separate counts:  Count 3;  Count 5;  and Count 7.  To the extent this argument was asserted as part of Count 3, it will not be dismissed and will be treated as part of Counts 5 and 7.

argues that by failing to provide an address at which Trinity would accept written disputes, Trinity and Leopold have violated those provisions. ECF No. 144 ¶¶ 187–200. Relevant to Count 4, the Letter states that any payment "must be made either by cash, cashier's check, certified check or money order, made payable to Trinity Financial Services, LLC, 28784 Network Place, Chicago, IL 60673." ECF No. 164-3 at 4. The Court agrees with Defendants that Mr. McDonough lacks Article III standing for this claim. Mr. McDonough claims that the Letter only contains an address to send payments, not written disputes, to Trinity. However, Mr. McDonough has not offered any evidence showing that he took any action with respect to the alleged lack of address. Courts have held that absent a showing of reliance in making a decision to verify or dispute the debt, a plaintiff lacks concrete harm sufficient to confer Article III standing. *See Pistone v. Client Sers., Inc.*, Civ. A. No. 21-1285, 2023 WL 3434042, at *3 (D.N.J. May 12, 2023) (finding that plaintiff lacked standing where she failed to allege debt collector's letter contained two separate addresses for the defendant such that a debtor would be unable to identify where to send a written communication disputing or asking to verify the debt under §§ 1692g, 1692g(b), 1692e, 1692e(10)); *Chaga v. Simon's Agency, Inc.*, Civ A. No. 21-4110, 2023 WL 2188699 (E.D. Pa. Feb. 23, 2023); *see also Huber*, 2022 WL 1801497, at *4 (E.D. Pa. June 2, 2022) ("Adequacy of informational harms for standing purposes therefore turns on a plaintiff's consequential action or inaction following receipt of a misleading or deceptive collection letter.") *aff'd on other grounds Huber*, 84 F.4th 132, 149. Mr. McDonough has not specified how he has been harmed and this count appears to allege a harm of confusion only, which is insufficient to confer standing. *Madlinger v. Enhanced Recovery Co, LLC*, Civ. A. No. 21-154, 2022 WL 2442430, at *5 (D.N.J. July 5, 2022) ("[M]ere confusion does not have a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit.") (cleaned up). Further, to the extent Mr. McDonough argues that he suffered an

informational injury, he has not established that Trinity's address is information he is legally entitled to receive. *See supra* at 13  Accordingly, Mr. McDonough lacks Article III standing for Count 4, and the claim will be dismissed.

### e.  Mr. McDonough has Standing for Count 5

Mr. McDonough's fifth FDCPA claim asserts that Defendants violated §§ 1692g(b), 1692e, and 1692e(10) by directing Mr. McDonough to dispute the debt with Trinity rather than Leopold.  Mr. McDonough contends that Defendants were aware that if Mr. McDonough contacted Trinity to dispute the debt, instead of Leopold, which sent the Letter, it would be insufficient to trigger Mr. McDonough's validation rights under § 1692g(b).  ECF No. 144 ¶¶ 202–220.  Relevant to Count 5, the Letter states the following, on page 2, in the body of the Letter:

> Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this letter, the debt will be assumed to be valid by Trinity.  If you notify Trinity within thirty (30) days that the debt or a portion of the debt is disputed, Trinity will send you verification of the debt.  If you would like to obtain such verification, direct your request in writing to Trinity within thirty (30) days.  The failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.

ECF No. 164-3 at 4.  Then, on the last page, following the Letter, the following Notice appears:

> **CONSUMER NOTICE PURSUANT TO 15 U.S.C. SECTION 1692(G)**
>
> **Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt to be valid. If you notify this office within thirty (30) days from the receipt of this notice that you dispute the debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and a copy of such judgment or verification will be mailed to you by this office.  If you request within thirty (30) days after receipt of this notice, this office will provide to you the name and address of the original creditor for the specified debt, if different from the current creditor.  If you send a notice**

>   **seeking any of the above information within thirty (30) days
>   from the receipt of this notice, we will stop our collection efforts
>   until we mail the requested information.**
>
>   **Name of the creditor:**        **Trinity Financial Services, LLC**
>
>   **Amount of the debt:**          **$45,157.06**

*Id.* at 7.

The Court concludes that Mr. McDonough has standing for this claim.  Mr. McDonough contends that he suffered an informational injury because Leopold included language in the body of the Letter instructing him to direct any dispute of the debt to Trinity and to request validation of the debt from Trinity, which conflicts with Mr. McDonough's rights under § 1692g(b).  ECF No. 185 at 15–16.  Similar to the plaintiff in *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *3 (3d Cir. Apr. 18, 2023), which Mr. McDonough cites, Mr. McDonough argues that Leopold's and Trinity's inclusion of "contrary and inconsistent" language mislead him about his rights, thereby "omitting the accurate information about h[is] § 1692g(a) rights to which []he is statutorily entitled."  And Mr. McDonough suffered more than just confusion because he relied on the Letter and contacted Trinity first.  ECF No. 185 at 15–16;  ECF No. 171 at ¶ 29 ("As my own research left me with no definitive answers, on or about September 30, 2019, I decided to call Trinity to see if I could get more information from them…").  Accordingly, Mr. McDonough has Article III standing for Count 5.

### f.        Mr. McDonough Lacks Standing for Count 6

Mr. McDonough's sixth FDCPA claim asserts that Leopold and Trinity violated §§ 1692g(a)(1) and 1692e.  Section 1692g(a)(1) requires the debt collector to provide the amount of the debt.  Mr. McDonough contends that Defendants did not state the amount of the debt. Instead, they stated the amount to cure the default, which did not explain what "other charges" are included in the default amount, how the "other charges" are calculated, how interest is accrued,

and whether the default amount is valid through which date.  ECF No. 144 ¶¶ 222–38.  Relevant

to Count 6, the Letter states the following:

> We represent Trinity.  The mortgage held by Trinity on your
> property located at [] BROADMEADOW DR, PITTSBURGH, PA
> 15237 IS IN SERIOUS DEFAULT because you have not made 143
> monthly payments of $191.57 for 11/22/2007 through 09/22/2019.
> Late charges and other charges have accrued to this date in the
> amount of $2,840.00.  The total amount now required to cure this
> default and to catch up with your outstanding missed payments as
> of the date of this letter is $22,162.20.
>
> You may cure this default within THIRTY FIVE (35) DAYS of the
> date of this letter, by paying Trinity the above amount of
> $22,162.20, plus any additional monthly payments and late charges
> which may fall due during the [sic] this period.

ECF No. 164-3 at 4.

The Court agrees with Defendants that Mr. McDonough does not have standing for this

claim.  Mr. McDonough essentially asserts that the amount due listed is fraudulent.  However, to

adequately show an injury for purposes of Article III standing, "a plaintiff must allege some form

of detrimental reliance on the representations made by a defendant in a collection letter." *Fitterer*

*v. Resurgent Cap. Servs. L.P.*, Civ. A. N. 21-19068, 2024 WL 1810027, at *4–5 (D.N.J. Apr. 25,

2024) (dismissing complaint where "Plaintiff does not allege how Defendants' failure to state in

the Collection Letter whether interest had accrued or that no further interest would accrue on the

debt changed Plaintiff's conduct in a detrimental way").  Here, Mr. McDonough has not offered

any evidence of harm as a result of the amount due in the Letter.  *See* ECF No. 171 ¶¶ 24, 25 ("In

short, the Letter failed to communicate the current amount due, total amount due, or how either of

these charges were calculated.").  Further, Mr. McDonough did not suffer an informational injury

because he took no action with respect to the alleged amount due.  *See also Huber*, 2022 WL

1801497, at *4 (E.D. Pa. June 2, 2022).  This count appears to allege a harm of confusion only,

which is insufficient to confer standing. *Madlinger*, 2022 WL 2442430, at *5. Accordingly, Mr. McDonough lacks Article III standing for Count 6, and the claim will be dismissed.

### g.        Mr. McDonough has Standing for Count 7

Mr. McDonough's seventh FDCPA claim asserts that Leopold and Trinity violated § 1692e by providing an unsigned addendum to the Letter that is reasonably susceptible to an inaccurate reading because it directed Mr. McDonough to direct disputes to "this office," does not connect the validation notice to the Letter, does not reconcile itself with Letter, and instructs Mr. McDonough to direct disputes to Trinity rather than Leopold. ECF No. 144 ¶¶ 240–252. Count 7 is substantively on all fours with Count 5. For the reasons set forth above regarding Count 5, Mr. McDonough has Article III standing for Count 7. *See Pistone*, 2023 WL 3434042, at *5 ("When allegations under § 1692e are based on the same language or theories as allegations under 15 U.S.C. § 1692g, a court's analysis of the § 1692g claim is usually dispositive.").

### B.        The Merits of Mr. McDonough's FDCPA Claims

Having determined that Mr. McDonough has standing for Counts 1, 5, and 7, the Court now turns to the merits of those claims. Mr. McDonough and Defendants have cross-moved for summary judgment on all Counts. The Court will address Mr. McDonough's Motion first.

### 1.    Legal Standard

To succeed on his FDCPA claims, Mr. McDonough must establish that "(1) []he is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Huber*, 84 F.4th at 150 (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). Only the fourth prong, for purposes of the parties' Motions, is disputed. *See generally* ECF Nos. 164, 167.

"Because the FDCPA is a remedial statute…we construe its language broadly, so as to effect its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citations omitted). Accordingly, "lender-debtor communications potentially giving rise to claims under the FDCPA…[are] analyzed from the perspective of the least sophisticated debtor." *Id.* at 454 (applying the least sophisticated debtor standard to a FDCPA claim under § 1692e); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (applying the same standard to § 1692g). "This standard ensures protection of all consumers, both gullible and shrewd." *Elnaggar v. Allard*, No. 22-2316, 2023 WL 3597381, at *2 (3d Cir. May 23, 2023); *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 427 (3d Cir. 2018). Applying this standard "requires more than 'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Brown*, 464 F.3d at 454 (quoting *Quadramed*, 225 F.3d at 354).

The least sophisticated debtor standard is objective, *see Tatis*, 882 F.3d at 427, and, although it sets a lower bar than one based on a "reasonable debtor," it nevertheless "preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)) (cleaned up). "Thus, although this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices.'" *Quadramed*, 225 F.3d at 354 (quoting *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996)). Finally, "[w]hether a collection letter violates the FDCPA is a question of law." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (analyzing alleged violations of Sections 1692(e) and (g)).

19

### 2. Mr. McDonough is Entitled to Summary Judgment on Count 1

Mr. McDonough expressly moves for summary judgment on Count 1. His primary contention is that Defendants violated the FDCPA because the Letter threatened action that could not be taken—that Trinity could foreclose on the Mortgage, when in fact it could not. Mr. McDonough makes two arguments. First, he argues that the four-year statute of limitations in 42 Pa. C.S. § 5525(7) applies, the HELOC was accelerated in 2007, and therefore a claim of foreclosure is time-barred. ECF No. 170 at 16. Second, he argues that regardless of which statute of limitations applies, because Trinity was not a licensed mortgage servicer under Pennsylvania law, it could not collect payments on the HELOC or Mortgage and could not foreclose on the Mortgage. *Id.* at 19; ECF No. 185 at 18–19. In opposition, Defendants argue that the Mortgage is an instrument under seal and is subject to the twenty-year statute of limitations under 42 Pa. C.S. § 4429(b)(1), and therefore Trinity's right to foreclose was not time-barred. ECF Nos. 180 at 22; 183 at 10. Leopold alone argues that even if the four-year statute of limitations applied, because the Mortgage is an installment contract, a cause of action accrues with each missed payment, and therefore foreclosure would still be timely. ECF No. 183 at 11. Thus, the Court must resolve which statute of limitations applies and when it began to run. *See* ECF No. 180 at 22.[7]

### a. Neither the HELOC nor the Mortgage is an Instrument Under Seal

The Court first considers whether the Mortgage or HELOC is an instrument under seal. If the Mortgage or HELOC is an instrument under seal, the 20-year statute of limitations is applicable, and therefore, Trinity's right to foreclose is not time-barred as a matter of law. Under

---

[7] The Court need not resolve the parties' dispute regarding whether the relevant instrument for statute of limitations purposes is the HELOC or the Mortgage because the Court concludes that neither document is an instrument under seal.

Pennsylvania law, "when a party signs a contract which contains the pre-printed word 'SEAL,' that party has presumptively signed a contract under seal." *Beneficial Consumer Discount v. Dailey*, 644 A.2d 789, 790 (Pa. Super. 1994).  However, "the word 'seal' by the signature line" is not required.  *Driscoll v. Arena*, 213 A.3d 253, 259–60 (Pa. Super. 2019) ("Borrower intends this to be a sealed instrument and to be legally bound hereby" is sufficient to make note an instrument under seal.).  Instead, the Court must employ principles of contract interpretation to determine whether the parties intended for the instrument to be under seal.  *Id.*;  *Wiley v. Brooks*, 263 A.3d 671, 677 (Pa. Super. 2021) (evaluating whether the instrument "evidences the intent to create an instrument under seal").

The HELOC is not an instrument under seal.  The parties do not dispute, and the Court's review confirms, that there is no mention of the word "seal" anywhere in that instrument.  With respect to the Mortgage, Trinity and Leopold rely upon the following language to argue that it is an instrument under seal.

> **Acknowledgment taken in the STATE OF PENNSYLVANIA, COUNTY OF**
>
> On this [22] day of [March, 2004], before me, [Patricia C. Vannelli], the undersigned officer, personally appeared [and Michael P. McDonough] known to me (or satisfactorily proven) to be the person(s) whose name(s) is (are) subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.
>
> In Witness Whereof, I hereunder set my hand and official seal.
>
> [Notarial Seal]                    [/s Patricia C. Vannelli]
>
>                                          Title [Notary]

ECF No. 164-2 at 4.  Mr. McDonough's signature appears on the bottom of the preceding page after the following words:  "WITNESS the signing of this Mortgage on the date set forth above, intending to be legally bound."  *Id.* at 3.

In arguing that the Mortgage is an instrument under seal, Defendants heavily rely on *Valley Nat'l Bank v. Marchiano*, 221 A.3d 1220, 1223 (Pa. Super. 2019) wherein an acknowledgement evidenced a constructive seal of the mortgage.   In *Marchiano*, the mortgage contained the following language after the mortgagees' signatures:

> "BE IT REMEMBERED, that on this 18th day of May, 2007[,] before me, the subscriber personally appeared [Appellants], who acknowledged under oath, to my satisfaction, that this person (or if more than one, each person): (a) is named in and personally signed this document; and (b) signed, ***sealed*** and delivered this document as his or his act and deed."
>
> Following the acknowledgment, there was a notary seal and signature.

*Id.* (emphasis in original) (internal citations omitted).

Here, the Court agrees with Mr. McDonough that the Mortgage is not an instrument under seal.   In *Marchiano*, the mortgagees themselves acknowledge that they "signed, **sealed** and delivered" the mortgage.   *Id.*   Here, Mr. McDonough acknowledged that he "executed" the Mortgage.   ECF No.164-2 at 3.   Unlike *Marchiano,* the only appearance of the word "seal" or any variation thereof is the notary's seal.   *Id.* at 3–4.   Notary publics are required by law to use "an official seal which shall be used to authenticate all the acts, instruments and attestations of the notary."   57 P.S. § 12(a).   The only seal on the Mortgage is that of the notary's, not Mr. McDonough's.   Under Defendants' theory, any document that is signed by a notary becomes an instrument under seal.   There is no support for that position.   Accordingly, the Mortgage is not an instrument under seal.

Because neither the HELOC nor the Mortgage is an instrument under seal, the twenty-year statute of limitations in 42 Pa. C.S. § 4429(b)(1) does not apply and the applicable statute of

limitations is four years, pursuant to 42 Pa. C.S. § 5525(7).  Consequently, the Court must next determine when that statute of limitations began to run.

### b.    Acceleration is a Genuine Issue of Material Fact

The parties disagree when the four-year statute of limitations began to run.  Leopold argues that, because the HELOC and Mortgage are installment contracts, the statute of limitations accrues upon each breach.  ECF No. 167 at 12.  As the last alleged breach of payment prior to the date of the Letter was September 22, 2019, foreclosure on the Mortgage would not be time-barred.  *Id.* The Court agrees with the general proposition that if the instrument is an installment contract, the statute of limitations would accrue upon each breach.  However, Mr. McDonough argues and has submitted evidence that the HELOC and therefore, the Mortgage were accelerated in 2007.  ECF No. 199 at 6.  If that is the case, then the four-year statute of limitations would long have expired by the September 2019 Letter.  In support of his contention that the HELOC and Mortgage were accelerated in 2007, Mr. McDonough relies on his own declaration and a PNC document showing the HELOC's loan history.  In his declaration, Mr. McDonough states that as "a result of this default, on or about May 31, 2007, PNC accelerated and charged-off the HELOC."  ECF No. 171 ¶ 10.  Mr. McDonough further states that the HELOC appeared on his credit report as delinquent and in default between 2010 and 2014, but by 2015, the HELOC had dropped off of his credit report completely.  *Id.* ¶¶ 11–14.  Mr. McDonough also provides the HELOC's loan transaction history from PNC which appears to show the HELOC being charged off in May of 2007.  ECF No. 187-2.  While this evidence provides some support for Mr. McDonough's position, it fails to conclusively establish this fact.  Defendants contend that the Mortgage was not accelerated in 2007.  In support, they cite the Letter itself.  In relevant part, the Letter states: "If you do not cure this default within THIRTY FIVE (35) DAYS, Trinity may elect to exercise its right to accelerate

the mortgage payments.  Upon acceleration, your total obligation will be immediately due and you may lose the chance to payoff the original mortgage in monthly installments."  ECF No. 164-3 at 4.  Viewing the evidence in the light most favorable to Defendants, as we must when considering Mr. McDonough's Motion, there is a genuine dispute of material fact as to whether the HELOC and therefore the Mortgage were accelerated.  Accordingly, Mr. McDonough is not entitled to summary judgment on his argument under §§ 1692e, 1692e(2)(A), 1692e(5), or 1692e(10) in Count 1 that the statute of limitations has run and the HELOC and Mortgage are time-barred.

### c.      Trinity and Leopold Violated the FDCPA

Mr. McDonough's second argument in Count 1 is that Trinity could not collect on the HELOC or foreclose on the Mortgage because Trinity was not a licensed mortgage servicer under Pennsylvania law.  ECF No. 170 at 19.  Leopold views this argument as an issue of standing, which misses the mark.  The issue is not whether Trinity would have standing in court to sue Mr. McDonough, *see Bloom v. JP Morgan Chase, N.A.*, 544 F. Supp. 3d 530 (W.D. Pa. 2021) (Stickman, J.) *aff'd* No. 21-2348, 2022 WL 3699352 (3d Cir. Aug. 26, 2022), but whether there would be a legal bar to Trinity enforcing its rights under the HELOC or the Mortgage because of the Pennsylvania Mortgage Licensing Act.

Most relevant to the Court's analysis, Section 1692e(5) prohibits a debt collector from threatening to "take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  The Mortgage Licensing Act defines a "mortgage servicer" as a "person who engages in the mortgage loan business by directly or indirectly servicing a mortgage loan."  7 Pa. C.S. § 6102.  A "mortgage loan" is defined to include a "first or secondary mortgage loan."  *Id.* "Service mortgage loan" is defined as "collecting or remitting payment or the right to collect or remit payments of principal, interest, tax, insurance or other payment under a mortgage loan."  *Id.*

A person engaged in the mortgage loan business as a mortgage servicer is required to be licensed as a Mortgage Servicer.  *Id.* at § 6111(a) ("[N]o person shall engage in the mortgage loan business in this Commonwealth without being licensed as …mortgage servicer…");  ECF No. 172-5 ¶ 8.

It is undisputed that at the time Leopold sent the Letter on behalf of Trinity, Trinity was not licensed as a mortgage servicer under the Pennsylvania Mortgage Licensing Act.  ECF Nos. 173 ¶ 55;  181 ¶ 55.  Accordingly, Trinity did not have the legal right to collect payments under the HELOC or the Mortgage.  Thus, the Court holds that the least sophisticated debtor would find the Letter misleading in that it represents that Trinity could collect payments on the HELOC when, in reality, Trinity was unlicensed to collect payments under the Mortgage Licensing Act.  *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) ("[A] debt collector 'may state that a certain action is possible, if it is true that such **action** is **legal** and is frequently **taken** by the collector or creditor with respect to similar debts,' but where the debt collector 'has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading.'") (emphasis not supplied).  Accordingly, Mr. McDonough is entitled to summary judgment under §§ 1692e, 1692e(5), 1692e(10) on this theory under Count 1.  As a result, Mr. McDonough is entitled to an award of statutory damages.  15 U.S.C. § 1692k(a)(2)(A).

It is undisputed that Trinity was not licensed under the Mortgage Licensing Act.  However, Mr. McDonough has not provided sufficient legal support for the Court to hold as a matter of law that a mortgage loan servicer's lack of licensure under the Mortgage Licensing Act is a bar to a foreclosure.  The Mortgage Licensing Act is silent on whether a mortgage servicer, like Trinity, must be licensed in order to foreclose on a mortgage.  Despite the opportunity to do so,[8]  Mr.

---

[8] The Court ordered the parties to provide supplemental briefing on this issue.  ECF Nos. 202, 203, 204, 205, 207, 210.  Defendants' briefing missed the mark.  Mr. McDonough is not, as Defendants argue, attempting to advance a claim for violation of the Mortgage Licensing Act.  ECF Nos. 203, 204.  Instead, he argues that because Trinity was

McDonough has not provided the Court with legal authority to substantiate this claim.   Mr. McDonough concedes that "research continues to show no case directly on point."   ECF No. 205 at 5.   The parties have not offered any legal interpretation and there is no authority that "collecting or remitting payment or the right to collect or remit payments of principal, interest, tax, insurance or other payment" should be extended to foreclosure.   7 Pa. C.S. § 6102.   Accordingly, Mr. McDonough has failed to show that Trinity's lack of licensure means that it could not legally commence foreclosure proceedings on the HELOC or the Mortgage.   Therefore, Mr. McDonough is not entitled to summary judgment under §§ 1692e, 1692e(5), or 1692e(10) on his theory in Count 1 that Defendants violated the FDCPA by threatening foreclosure when Trinity was not licensed under the Mortgage Licensing Act.

### 3.   Mr. McDonough is Not Entitled to Summary Judgment on Counts 5 and 7

Mr. McDonough styled his Motion as one for summary judgment on all of his FDCPA claims, however, his briefing only contains substantive arguments on whether Trinity's right to foreclose was time-barred, i.e., Count 1.   ECF No. 170 at 2, 21, 24 (arguing "[t]he HELOC is Subject to the Four-Year Statute of Limitations" and "Trinity Could not Have Sued Plaintiff to Collect the Alleged Debt").   With the exception of a passing reference to Mr. McDonough's now-dismissed overshadowing claim, ECF No. 170 at 20, Mr. McDonough does not address any other FDCPA claims, including the merits of Counts 5 and 7.   Accordingly, the Court will summarily deny Mr. McDonough's Motion as to Counts 5 and 7 because he failed to brief those Counts.

### 4.   Defendants are not Entitled to Summary Judgment

---

not legally authorized to collect payment on the HELOC or the Mortgage, the Letter's demand for money and the threat of foreclosure violated the FDCPA.   ECF No. 205.   While the parties dispute whether Mr. McDonough would have a private right of enforcement under the Mortgage Licensing Act, the Court will not address that issue because it is irrelevant to the interpretation of 7 Pa. C.S. § 6102, upon which Mr. McDonough relies.

As Trinity and Leopold seek the same relief, the Court will address their Motions together.

### a.      Count 1

For the reasons stated above, in light of the Court's finding that Mr. McDonough is entitled to summary judgment on the collection portion of his Pennsylvania Mortgage Licensing Act theory under Count 1, and there is a genuine issue of material fact as to the remaining statute of limitations theory under Count 1, Trinity's and Leopold's request for summary judgment is denied.

### b.      Counts 5 and 7

Defendants move for summary judgment on Counts 5 and 7.  Trinity argues, referring to page 2 of the Letter, that the "paragraph concerning Trinity provides an additional manner by which Plaintiff may dispute the debt and states how Trinity may respond."  ECF No. 164 at 20. Trinity cites *Lerner v. Forster*, 240 F. Supp. 2d 233 (E.D. N.Y. Jan. 22, 2003) to argue that the paragraph "simply states what Trinity, the owner and servicer of the mortgage, will do if Plaintiff contacts Trinity.  It does not affect or implicate Plaintiff's right to seek validation of the debt, which would require Leopold to cease collection efforts until such validation is obtained."  *Id.* at 24.  *Lerner* is distinguishable.  In *Lerner* the paragraph from the creditor stated:

> If you want to ***resolve*** this matter you may take one of the following actions: You may either pay the balance in full or contact my client at 1–800–280–0559 and work out an arrangement for payment that is acceptable to my client. Notwithstanding partial payments made directly to our client, your entire balance is due in full. Acceptance of partial payments made directly to our client in no way nullifies their contractual right to demand the entire balance once the account is in default.

240 F. Supp. 2d at 235.  The Court in *Lerner* explained that:

> Paragraph 2 instructs Plaintiff to call the creditor or send a partial payment in order to *resolve* her debt.  Conversely, paragraph 3, in accordance with the FDCPA, indicates that if Plaintiff wishes to *dispute* her debt, she must do so within 30 days by mailing a

> written notice to the debt collector, F & G.  Therefore, the language in paragraph 3 of the Letter is distinct and non-contrary to the language in paragraph 2."  *Id.* at 238.  The Court continued that the "distinction between resolving and disputing debt is discussed at length in the case law.

*Id.* (collecting cases).

Here, both paragraphs at issue contain language regarding Mr. McDonough *disputing* the debt.  *Compare* ECF No. 164-2 at 3, *with* ECF No. 164-2 at 4.  As Trinity concedes, any dispute or verification sent to Trinity would not trigger Mr. McDonough's rights under § 1692g(b).  ECF No. 164 at 24 ("Plaintiff would have no legal recourse against Trinity if Trinity did not send him validation, as there is no legal basis for this letter triggering any legal responsibilities by Trinity under Section 1692g(b).  Rather, if Plaintiff set the dispute in writing within thirty (30) days to Leopold, this would trigger the Section 1692g(b) requirements.").  The Court disagrees that "inviting the consumer to contact the creditor is not a false or misleading statement."  ECF No. 164 at 29.  The least sophisticated debtor could view Trinity's "invitation" to submit disputes and verifications to Trinity, which Defendants know would not trigger the consumer's rights under § 1692g(b).  Accordingly, viewing the evidence in the light most favorable to Mr. McDonough, the Court finds that Trinity is not entitled to summary judgment on Counts 5 and 7.

Leopold argues that this claim "is simply not a concrete harm.  *See Chega v. Simon Agency*, [sic] *supra*."  ECF No. 167 at 14.  Leopold's argument is unintelligible.  The Court agrees with Mr. McDonough that Leopold "appears to be conflating Article III standing with liability," ECF No. 189 at 22, and Leopold's failure to correctly cite to caselaw or direct the Court to relevant portions of the opinion warrants summary denial of its claim.  Accordingly, viewing the evidence in the light most favorable to Mr. McDonough, the Court finds that Leopold is not entitled to summary judgment on Counts 5 and 7.

28

**V.      Conclusion**

For the foregoing reasons, Mr. McDonough's Motion for Summary Judgment, ECF No. 169, will be GRANTED IN PART AND DENIED IN PART;  Trinity's Motion for Summary Judgment, ECF No. 174, will be GRANTED IN PART AND DENIED IN PART;  and Leopold's Motion for Summary Judgment, ECF No. 166, will be GRANTED IN PART AND DENIED IN PART, all as further set forth in the attached ORDER.

DATED this 16th day of July, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record