IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL P. MCDONOUGH,<br><br>Plaintiff,<br><br>v.<br><br>LEOPOLD & ASSOCIATES, PLLC,<br>TRINITY FINANCIAL SERVICES, LLC,<br><br>Defendants. | 2:21-CV-00375-CCW |

## OPINION

Before the Court is Plaintiff Michael P. McDonough's Motion for Attorneys' Fees and Costs, ECF No. 320. For the reasons set forth below, the Motion will be GRANTED IN PART.

**I.      Background**

Mr. McDonough initially filed this case in 2020 in the United States District Court for the Southern District of New York on behalf of himself and a putative class of similarly situated individuals. ECF No. 1. He alleged that Defendants Leopold & Associates, PLLC, ("Leopold") and Trinity Financial Services, LLC ("Trinity") violated various provisions of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") when Leopold sent him a letter seeking to collect a time-barred debt that Mr. McDonough owed to Trinity. *Id.* After a year of proceedings in the Southern District of New York, the case was transferred to this District in March 2021 and was assigned to the undersigned. ECF Nos. 35, 36. Protracted litigation ensued.

In October 2021, the Court resolved a number of discovery disputes related to Mr. McDonough's class action claims. ECF No. 64. Mr. McDonough thereafter filed a motion for class certification, seeking to certify pursuant to Rule 23 of the Federal Rules of Civil Procedure a class of consumers who had received collection letters from Leopold similar to the one he had

received.[1] ECF No. 69. The Court denied that motion. ECF No. 93. After conducting further discovery, the parties filed cross-motions for summary judgment on Mr. McDonough's individual claims. ECF Nos. 106, 108, 110. The Court granted-in-part Leopold and Trinity's motions, and dismissed Mr. McDonough's then-operative complaint without prejudice for lack of standing. ECF No. 143. However, the Court granted Mr. McDonough leave to file an amended complaint, which he timely did. *Id.*; ECF No. 144. The parties then engaged in more discovery, before again filing cross-motions for summary judgment. ECF Nos. 160, 164, 166, 169. On July 16, 2024, the Court granted-in-part and denied-in-part the parties' motions. ECF Nos. 211, 212. Specifically, the Court granted summary judgment in favor of Defendants on Counts 2, 3, 4, and 6 of the Second Amended Complaint, but denied summary judgment as to Counts 1, 5, and 7. ECF No. 212. The Court granted summary judgment in Mr. McDonough's favor on one of his theories in Count 1—that Leopold's collection letter violated FDCPA §§ 1692e, 1692e(5), 1692e(10) because it attempted to collect payment on a mortgage when Trinity was not licensed as a mortgage servicer under the Pennsylvania Mortgage Licensing Act—but denied summary judgment on his other theories in Counts 1, 5, and 7. *Id.*

The parties then prepared for trial on Mr. McDonough's remaining claims and damages. Trinity settled with Mr. McDonough less than two weeks before trial was scheduled to begin. ECF No. 279. Leopold followed suit and settled with Mr. McDonough one business day before trial was set to begin. ECF No. 308. Thereafter, Mr. McDonough filed the instant Motion for Attorneys' Fees and Costs, ECF No. 320, seeking payment from Leopold.

---

[1] Mr. McDonough also sought to certify a subclass of consumers who actually made payment to either Trinity or Leopold in reliance on the false representation in the collection letter(s). ECF No. 69.

**II.     Legal Standard**

Mr. McDonough's request for attorneys' fees and costs arises from 15 U.S.C. § 1692k(a)(3). ECF No. 320. That statute entitles a successful plaintiff in an FDCPA case to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Such fees and costs are "mandat[ory] . . . as a means of fulfilling Congress's intent" in enacting the FDCPA. *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991), *overruled on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020) (en banc). "Indeed, . . . . courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted." *Id.* (citing cases).

Where, as here, the moving party seeks an award of attorneys' fees under a fee-shifting statute, the calculation of the appropriate fee is determined using the lodestar method.[2] *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 399 (3d Cir. 2018); *Wintjen v. Denny's, Inc.*, No. 2:19-CV-00069-CCW, 2025 WL 1009003, at *2 (W.D. Pa. Apr. 4, 2025) (Wiegand, J.); *see Kaymark v. Udren L. Offs., P.C.*, No. CV 13-419, 2019 WL 7494203, at *5 (W.D. Pa. Feb. 5, 2019) (Eddy, M.J.), *report and recommendation adopted sub nom. Hill v. Urden L. Offs., P.C.*, No. CV 13-419, 2020 WL 1508982 (W.D. Pa. Mar. 30, 2020) (Bissoon, J.) (applying the lodestar method to a fee application brought under § 1692k(a)(3)). Under that method, first, the district court must calculate the fee applicant's lodestar—"the number of hours worked multiplied by the prevailing hourly rate"—before applying the twelve factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017).

**III.     Analysis**

---

[2] The parties agree that the lodestar method applies here. *See* ECF No. 321 at 6; ECF No. 324 at 4.

Mr. McDonough was represented in this case by Sanders Law Group ("SLG"). SLG submitted a lodestar of $736,933 in connection with the instant Motion. ECF No. 322-1. Additionally, SLG reported costs of $5,350.09 to litigate this case. ECF No. 321 at 15. Leopold objects to Mr. McDonough's request on several grounds. Specifically, Leopold asserts that the rates charged by SLG are not reasonable and should be reduced. ECF No. 324 at 4–6. Leopold further argues that the time SLG spent on this case was unreasonable, and challenges many specific billing entries as either excessive, vague, duplicative, or otherwise non-compensable.[3] *Id.* at 6–9. The Court will first address the reasonableness of SLG's requested rates, and then turn to the specific billing entries that Leopold objects to.

### A. SLG's Requested Hourly Rates Are Reasonable

SLG requests to be paid the following hourly rates: $650 for attorney Craig B. Sanders, $500 for attorney Jonathan M. Cader, and $330 for attorney Kara McCabe. ECF No. 321 at 10. To support the reasonableness of these rates, SLG relies on the Community Legal Services of Philadelphia ("CLS") fee schedule,[4] and three declarations from attorneys practicing in Pittsburgh who each attest to the reasonableness of SLG's requested rates. *Id.* at 9–11. Leopold contends that SLG's requested hourly rates are excessive. ECF No. 324 at 4–6. Specifically, Leopold argues that Mr. McDonough's reliance on the CLS fee schedule is improper, and the attorney declarations proffered by Mr. McDonough as evidence of a reasonable rate in Pittsburgh are of little value because the counsel who authored them do not practice in the FDCPA space. *Id.* Leopold further asserts that the "highest hourly rate set forth in a published decision in this District for an FDCPA

---

[3] Leopold also objects to certain costs as non-compensable. ECF No. 324 at 10.

[4] *See* Attorney Fees, Community Legal Services of Philadelphia, https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited Sept. 4, 2025). The CLS fee schedule "has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001).

4

case is $400 an hour." *Id.* at 5 (citing *Milko v. Evolution Asset Grp. LLC*, No. CV 2:20-1789, 2023 WL 7923932 (W.D. Pa. Oct. 17, 2023) (Dodge, M.J.), *report and recommendation adopted sub nom. Milko v. Snow*, No. CV 20-1789, 2024 WL 361341 (W.D. Pa. Jan. 31, 2024) (Hardy, J.). Leopold thus concludes that an hourly rate of $400 for Mr. Sanders, $300 for Mr. Cader, and $200 for Ms. McCabe is appropriate, especially because SLG has been awarded fees at similar rates in the Eastern and Southern District of New York "where they primarily practice." *Id.* at 5–6 (citing cases).

To determine an attorney's reasonable hourly rate, a court must assess "the experience and skill of the . . . attorney[] and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *White v. Beaver Cnty.*, No. 2:17-cv-00998, 2020 WL 3866896, at *3 (W.D. Pa. July 9, 2020) (Hornak, C.J.) (citing *Maldonado*, 256 F.3d at 184). The relevant "community" for purposes of determining a reasonable hourly rate is the forum of the litigation, unless (1) "the need for the special expertise of counsel from a distant district is shown," or (2) "local counsel are unwilling to handle the case." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005) (cleaned up). In determining a reasonable rate, a district court "may not set attorney's fees based on a generalized sense of what is usual and proper but must rely upon the record." *White*, 2020 WL 3866896, at *3 (citing *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001)). Accordingly, the plaintiff bears the burden of "producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Id.* "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *Stadler v. Abrams*, No. CV 13-2741, 2018 WL

5

3617967, at *2 (D.N.J. July 30, 2018), *aff'd*, 785 F. App'x 66 (3d Cir. 2019); *see also Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 595 (3d Cir. 2000) ("An attorney's showing of reasonableness must rest on evidence other than the attorney's own affidavits."). The party opposing the fee request "has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Once an adverse party raises an objection, the court "has a great deal of discretion to adjust the fee award in light of those objections." *Id.*

Here, the Court finds that the hourly rates requested by SLG are reasonable. While Leopold correctly notes that the Court has previously declined to adopt the CLS fee schedule as representative of Pittsburgh market rates,[5] Mr. McDonough is not asking the Court to adopt the CLS rates. Rather, SLG "has decided to utilize lower hourly rates in the instant litigation" because this case is venued in Pittsburgh, not Philadelphia. ECF No. 321 at 10. Thus, "[Mr.] Sanders seeks $650/hour (rather than the CLS rate of $916/hour), [Mr.] Cader seeks $500/hour (rather than the CLS rate of $635/hour) and [Ms.] McCabe seeks $330/hour (rather than the CLS rate of $364/hour)." *Id.*

Furthermore, the Court finds persuasive the attorney declarations submitted by Mr. McDonough attesting to the reasonableness of SLG's requested rates. Specifically, Mr. McDonough has offered declarations from Joseph H. Chivers, Esq., who has practiced in employment litigation in Pittsburgh since 1994, ECF No. 322-3 ¶ 3, Christine T. Elzer, Esq., who has practiced in employment litigation in Pittsburgh since 2008, ECF No. 322-4 ¶¶ 1–2, and Kenneth R. Behrend, Esq., who has practiced in various fields of civil litigation (primarily consumer insurance litigation) in Pittsburgh since 1982, ECF No. 322-5 ¶¶ 7–8, 14–15. While

---

[5] *See McDonnell v. KRG Kings LLC*, No. 2:20-CV-01060-CCW, 2024 WL 3082737, at *3 (W.D. Pa. June 21, 2024) (Wiegand, J.).

Leopold argues that these attorney declarations are of little value because the declarants are not experienced in FDCPA litigation, each declarant attests that they are familiar with the hourly rates charged by attorneys in this District generally for purposes of calculating lodestar rates in fee-shifting cases. ECF No. 322-3 ¶ 3; ECF No. 322-4 ¶ 5; ECF No. 322-5 ¶¶ 3, 26. And both Mr. Chivers and Ms. Elzer attest that the market rates for plaintiffs'-side civil litigators in Pittsburgh generally fall within the same range, and that SLG's rates are reasonable considering their attorneys' experience and skill. ECF No. 322-3 ¶¶ 5, 16; ECF No. 322-4 ¶¶ 5, 16; *see also* ECF No. 322-5 ¶ 26 (attesting that in Mr. Behrend's opinion, SLG's requested rates "fall within the reasonable community market rates charged by (and awarded to) similarly skilled attorneys working with the Western Pennsylvania legal market"). Indeed, Mr. Sanders has more than thirty-two years' experience and has litigated over 2600 cases involving the FDCPA and/or Fair Credit Reporting Act in various jurisdictions across the country. ECF No. 321 at 11. Mr. Cader has eighteen years of experience handling a variety of complex litigation matters, and Ms. McCabe has seven years' experience in such matters. *Id.* at 12.

Leopold's remaining arguments are unconvincing. First, although Leopold argues that "the highest hourly rate set forth in a published decision in this District for an FDCPA case is $400 an hour," it is unclear what Leopold means by "published" in this context, and the Court's own research revealed at least one FDCPA case in this District where attorneys' requested rates of $500 per hour were approved as reasonable over the defendant's objection. *Kaymark*, 2019 WL 7494203, at *9–10. And those rates were approved over six years ago. *Id.* Leopold has offered no other evidence of what a reasonable market rate is in Pittsburgh for SLG's services, and the Court does not find Leopold's reliance on rates approved in the Eastern and Southern Districts of New York helpful to that determination.

7

On balance, the Court finds that the rates requested by SLG—$650 for Mr. Sanders, $500 for Mr. Cader, and $330 for Ms. McCabe—are reasonable. Accordingly, the Court will approve those rates.

### B. Excessive Billing Entries

To conduct the second half of the lodestar calculation the Court must determine whether the hours billed by SLG are reasonable. "[I]n calculating the hours reasonably expended [by a fee applicant], the District Court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) (cleaned up). Here, Leopold argues that SLG's total hours must be reduced for several reasons. First, Leopold argues that the Court should apply "a minimum 50% reduction" in light of what Leopold characterizes as a "consistent pattern over decades of [SLG] submitting inflated bills on applications and then having a court reduce the hours by 10-40%." ECF No. 324 at 7. Next, Leopold makes specific objections to aspects of SLG's fee application. *Id.* at 7–9. Mr. McDonough responds to each of Leopold's objections in kind. ECF No. 327 at 2–5. The Court will first address Leopold's argument that a blanket 50% reduction is warranted, and then turn to each of Leopold's specific objections.

#### 1. The Court Will Not Apply a Blanket 50% Reduction to SLG's Time Entries

Leopold first argues that SLG's time entries ought to be reduced by at least 50% in light of SLG's history of submitting inflated fee applications. ECF No. 324 at 6–7. Specifically, Leopold cites to a number of cases within the Eastern and Southern District of New York where SLG's hours were cut by 10 to 47%. *Id.* at 6–7 (citing cases). Mr. McDonough responds that the cases cited by Leopold involved a different law firm at which Mr. Sanders was a partner, and that in any

8

event, the Court should set fees in this case based upon the record before it, not based on reductions applied in other cases. ECF No. 327 at 2.

The Court agrees with Mr. McDonough that an across-the-board reduction to SLG's billing entries is improper. The Court may only reduce a fee award when "an opposing party lodges a *sufficiently specific* objection." *Interfaith Cmty.*, 426 F.3d at 713 (emphasis added). Leopold's suggestion that a different firm's history of having its hours cut in other cases merits a blanket reduction of SLG's hours in this case is not a specific objection targeted at the billing records at issue here. Moreover, a generic objection to a fee application as "excessive" and/or "unreasonabl[e]" is only proper "when [the requested fee] is 'simply absurd,'" not if it "is just 'grossly excessive.'" *Horizon House, Inc. v. E. Norriton Twp.*, No. CV 19-1252, 2023 WL 1765912, at *4 (E.D. Pa. Feb. 3, 2023) (quoting *Young v. Smith*, 905 F.3d 229, 235 (3d Cir. 2018)). Here, the Court does not find that past examples of hours being cut in other cases renders SLG's fee application in this case absurd. Accordingly, "[t]he court will instead scrutinize each of [SLG's] billing entries subject to the [Defendants'] specific objections to determine if each is reasonable." *Horizon House*, 2023 WL 1765912, at *4; *see Interfaith Cmty.*, 426 F.3d at 713 (stating that once a sufficiently specific objection is raised, "the burden is on the party requesting the fees to justify the size of its award," and the Court must "go line, by line, by line through the billing records supporting the fee request" to determine if they have met that burden).

### 2. Excessive Time Entries

Leopold objects to 41.1 hours of time billed by Mr. Sanders on Westlaw and Google research that Leopold argues "should have been done by a junior associate or paralegal, not a senior partner seeking to charge $650 an hour for his time." ECF No. 324 at 8. Mr. McDonough responds that the challenged time entries are not excessive because "the research needed to

9

determine if case is viable in anticipation of a class action is not a waste of time for a partner who not only has a significant personal investment in the case but is also primarily responsible for directing the course of litigation[.]" ECF No. 327 at 3.

The entries that Leopold cites do appear to the Court to be unreasonable. For example, Mr. Sanders billed 3.6 hours for "Google research into Trinity to attempt to determine size of entity." ECF No. 322-1 at 2 (line 108). That is not something that a senior partner would typically bill for. And even if it was, spending the better part of four hours on Google researching the "size" of an entity is excessive. The Court will exclude this time. The Court also finds that the remaining 37.5 hours of Mr. Sanders' challenged time entries reflect tasks that should have been performed by someone more junior rather than a senior partner charging $650 per hour. *See, e.g.*, ECF No. 322-1 at 3 (reporting 7.2 hours billed for "Westlaw research re: [opposition brief to MTD]" at line 161), 14 (reporting 5.2 hours billed for "[a]dditional Westlaw research edits and comments to brief [in opposition to motions for reconsideration"] at line 1081). Accordingly, the Court will reimburse SLG for this time at a rate of $330 per hour, which is in line with Ms. McCabe's billing rate. *See Bistrian v. Levi*, No. CV 08-3010, 2024 WL 4980783, at *5 (E.D. Pa. Dec. 3, 2024) (reimbursing hours expended on certain tasks at a junior associate rate in light of the nature of the tasks).

Accounting for these modifications, SLG's lodestar will be reduced by $14,340.[6]

### 3. "Unsuccessful" Litigation Efforts

Leopold next argues that SLG's time spent litigating venue and class certification should be excluded because those efforts were ultimately unsuccessful. ECF No. 324 at 8. Mr. McDonough responds that there is no basis to exclude all of SLG's time while this case was

---

[6] This reduction consists of a $2,340 reduction attributable to Mr. Sander's Google research (3.6 hours times $650 per hour), plus a $12,000 reduction attributable to the remaining 37.5 hours of time charged at the difference between Mr. Sanders and Ms. McCabe's hourly rates (37.5 hours times $320 per hour).

10

pending in the Southern District of New York, where venue was litigated, as some litigation efforts there were successful. ECF No. 327 at 3. For example, Mr. McDonough points out that SLG "successfully defeated Leopold's first MTD in NYSD." *Id.* Neither party cites any authority supporting its position.

When calculating a fee applicant's lodestar, "the court can reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed and that were distinct in all respects from' claims on which the party did succeed." *Rode*, 892 F.2d at 1183. And after calculating the lodestar, the Court can adjust the lodestar downward to account for "time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." *Id.* As discussed below, the Court finds that the issues of venue and class certification are related to Mr. McDonough's litigation of the claims on which he was successful. Accordingly, the Court will consider those issues and whether they warrant a downward adjustment after conducting the initial lodestar calculation.

### 4. Improper Block Billing

Leopold objects, without citing any authority, to 216.7 hours SLG billed for what Leopold characterizes as improper "block billing." ECF No. 324 at 8–9. "Block billing is a timekeeping method where lawyers record their daily time for various tasks in one entry, rather than using itemized time entries for each separate task." *Mozingo v. Oil States Energy Servs., L.L.C.*, No. CV 15-529, 2018 WL 4473345, at *9 (W.D. Pa. Sept. 18, 2018) (Kearney, J.) (quoting *Shihee Donvell Hatchett v. Cnty. of Phila.*, No. 09-1708, 2010 WL 4054285, at *4 (E.D. Pa. Oct. 15, 2010)). While "[b]lock billing is not an ideal practice, and lawyers who use it do so at their own peril," *id.*, the Third Circuit has held that so long as a fee petition is "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed," it "is not necessary

to know the exact number of minutes spent nor the precise activity to which each hour was devoted," *Rode*, 892 F.2d at 1190.

Here, the Court does not construe the billing entries cited by Leopold as "block billing." Block billing implies that the challenged entries bill a lump-sum number of hours to numerous different tasks, such that it is difficult to discern how time much the biller spent on each task. *See, e.g.*, *Wintjen*, 2025 WL 1009003, at *9 (excluding a block-billed time entry because the Court could not determine "how much of the claimed three hours was spent on mailing letters (administrative work) versus drafting discovery responses (legal work)"). The billing entries Leopold cites as examples of block billing generally do not aggregate numerous tasks into a single billing entry. Rather, many of them report billing for a single task. *E.g.*, ECF No. 322-1 at 13 (billing 6.8 hours for "[c]omplet[ing] draft of opposition to Leopold MSJ" at line 968). And to the extent that there are multiple tasks included in a given time entry, the entries "sufficiently identif[y] the tasks that [SLG] worked on such that the Court can determine that they are all interrelated and involved" the same general workstreams. *Wintjen*, 2025 WL 1009003, at *9; *see, e.g.*, ECF No. 322-1 at 8 (billing 6.8 hours for "drafting motion for class cert, including client and CBS declarations" at line 600). Furthermore, the time spent, which largely was for legal research and drafting briefs, does not seem excessive to the Court in light of the voluminous briefing that this case generated over a five-year span. Accordingly, the Court will not exclude the time entries that Leopold characterizes as "block billed" time.

### 5. Vague Time Entries

Leopold argues that SLG's time entries are "replete with vague descriptions" that "justify a sharp reduction in allowed time." ECF No. 324 at 9. But Leopold only cites three examples of such "vague" descriptions. *Id.* The Court has reviewed those examples and does not find them

vague when considered alongside the adjacent time entries, and therefore will not exclude them. To the extent that Leopold invites the Court to examine each time entry in SLG's fee application for vagueness, that is an improper means of objecting to a fee application which the Court declines to entertain. *See Horizon House*, 2023 WL 1765912, at *4 (examining only the defendant's "specific objections"); *Interfaith Cmty.*, 426 F.3d at 713 (stating that an objection must be "sufficiently specific").

### 6. Duplicative Work

Leopold objects to several time entries that it characterizes as "duplicative." ECF No. 324 at 9. Specifically, Leopold points to entries where "Mr. Sanders bill[ed] frequently for conferences with Mr. Cader." *Id.* Mr. McDonough responds that "conferences to coordinate work between two attorneys that are reasonably chargeable to the client serves to avoid what would otherwise be two people working blindly with one another, which would only lead to further duplication." ECF No. 327 at 4. Neither party cites any caselaw supporting their position. That said, the Court agrees with Mr. McDonough. Meetings between attorneys to discuss a case's status and litigation strategy are not "duplicative." They are a necessary and ordinary part of the practice of law. *See Sch. Dist. of Philadelphia v. Deborah A.*, No. CIV.A. 08-2924, 2011 WL 2681234, at *3 (E.D. Pa. July 8, 2011) ("[I]t is reasonable for lawyers and paralegals to communicate about a case throughout the course of the litigation."). The specific time entries Leopold cites do not strike the Court as unreasonable, unnecessary, or excessive with respect to the time spent on such meetings. *See, e.g.*, ECF No. 322-1 at 3 (billing 0.2 hours each for Mr. Cader and Mr. Sanders for time spent discussing the outcome of a court hearing). Accordingly, the Court will not exclude this time.

### 7. Time Spent on the Fee Application

Leopold notes that SLG "expended 52.9 hours on the fee application." ECF No. 324 at 9. Leopold does not, however, make any particular objection as to this time; it simply states how much time SLG billed. *See id.* That is not a specific objection, and the Court need not consider it. In any event, SLG's time spent preparing the instant fee application is compensable. *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978). And spending approximately 53 hours to prepare a fee application in a case that spanned over five years, and which settled on the eve of trial, does not strike the Court as overly excessive. Accordingly, the Court will not exclude or reduce this time.

### 8. Out of Town Travel

Mr. McDonough argues that the time spent and costs SLG incurred for out of town travel to Pittsburgh is compensable. ECF No. 321 at 14–15. Leopold disagrees. ECF No. 324 at 9. The Court agrees with Leopold. While it is true that travel time "is generally recoverable 'when it is the custom of attorneys in the local community to bill their clients separately for [it]," *Planned Parenthood of Cent. New Jersey v. Att'y Gen. of State of New Jersey*, 297 F.3d 253, 267 (3d Cir. 2002), that is not the case when a plaintiff hires out-of-town counsel. "[U]nder normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel." *Interfaith Cmty.*, 426 F.3d at 710. "However, where forum counsel are unwilling to represent the plaintiff, such costs are compensable." *Id.* Here, SLG hails from New York, and Mr. McDonough makes no showing that local counsel was unwilling to represent him. Thus, SLG's time and costs for travel to and from Pittsburgh are not compensable. *See Pepke v. Manor House Kitchens, Inc.*, No. 2:23-CV-2089, 2024 WL 5007380, at *2 (W.D. Pa. Dec. 6, 2024) (Ranjan, J.) (excluding travel time and costs for

out-of-district counsel). Accordingly, the Court will exclude the 11 hours that Mr. Cader billed and the 4.2 hours that Mr. Sanders billed for travel time. Accounting for these modifications, SLG's lodestar will be reduced by $8,230.

After making all of the aforementioned reductions, and using the hourly rates that the Court has determined to be reasonable market rates for the services provided, the Court calculates SLG's final lodestar to be $714,363.

### C.  Lodestar Adjustment

Having calculated the lodestar amount, the Court may consider whether adjust it up or down based on a variety of factors.[7] *See Huber v. Simon's Agency, Inc.*, No. CV 19-1424, 2025 WL 1710045, at *7 (E.D. Pa. June 18, 2025) (citing *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)). "[T]he most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Indeed, "[w]hen a defendant requests a downward adjustment based on plaintiff's limited success, a court must 'make clear that it has considered the relationship between the amount of fee awarded and the results obtained.'" *Huber*, 2025 WL 1710045, at *7 (quoting *Hensley*, 461 U.S. at 437). The Court may not, however, "adjust the lodestar to reflect a certain ratio between the fees and damages awarded." *Robinson v. Fetterman*, 387 F. Supp. 2d 432, 438 (E.D. Pa. 2005) (citing *Washington v. Phila. Cnty. Court of Common Pleas*, 89 F.3d 1031, 1042–43 (3d Cir.1996)).

Here, Leopold argues that the Court should exclude time Mr. McDonough spent litigating the issues of venue and class certification, as he was unsuccessful on both fronts. ECF No. 324 at

---

[7] Those factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Windall*, 51 F.3d at 1185 (citing *Johnson*, 488 F.2d at 717–19).

8. As noted above in Part III.B.3, the Court construes those issues as related to the claims on which Mr. McDonough was ultimately successful. *See Huber*, 2025 WL 1710045, at *8 (citing *Hensley*, 461 U.S. at 435) (finding class certification related to plaintiff's individual FDCPA claims where the putative class's claims "relied on the same argument that led [plaintiff] to prevail on her individual [claims]"). Accordingly, the Court will consider whether to adjust the lodestar downwards considering Mr. McDonough's lack of success on those issues. *See Hensley*, 461 U.S. at 435–37.

With regard to venue, the Court will not adjust the lodestar downwards. Leopold was the party that decided to litigate the issue of venue, not Mr. McDonough, *see* ECF No. 27, and while Leopold was successful in transferring the case to this District, Mr. McDonough was ultimately successful in this case nonetheless. Leopold "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [Mr. McDonough] in response."[8] *City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc)).

Mr. McDonough's failure to certify a class, however, does warrant a downward adjustment of the lodestar. From the outset of this case, Mr. McDonough sought to represent a class of similarly situated individuals. His failure to achieve class certification is a significant aspect of the case on which he was unsuccessful and is a proper basis to adjust SLG's lodestar downwards. *See Huber*, 2025 WL 1710045, at *7 (adjusting lodestar downwards by 60% where plaintiff settled individual claims without re-filing a motion for class certification); *Shelton v. Restaurant.com Inc.*, No. CV10824MASDEA, 2016 WL 7394025, at *17 (D.N.J. Dec. 21, 2016) (adjusting

---

[8] It also bears noting that Leopold's request to transfer this case to this District was an alternative remedy granted in lieu of Leopold's preferred remedy of dismissal of this case, on which Leopold was unsuccessful. *See* ECF Nos. 27, 35.

16

lodestar downwards by 35% after plaintiff was successful on individual claims, but failed to achieve class certification); *Freid v. Nat'l Action Fin. Servs., Inc.*, No. CIV.A. 10-2870 ES, 2011 WL 6934845, at *5 (D.N.J. Dec. 29, 2011) (reducing lodestar in light of failure to achieve class certification). Taking all the facts and circumstances of this case into account, and comparing the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation[,]" *Hensley*, 461 U.S. at 435, the Court finds that a 35% reduction of SLG's lodestar is warranted in light of Mr. McDonough's lack of success on his class claims.

Applying this reduction to the previously calculated lodestar of $714,363, the Court will award SLG $464,335.95 in attorneys' fees.

### D. Costs

In addition to attorneys' fees, SLG seeks an award of costs in the amount of $5,350.09. ECF No. 321 at 15. Reasonable costs are recoverable under the FDCPA. 15 U.S.C. § 1692k(a)(3). However, SLG seeks $3,094.13 in "travel/hotel costs" for travel to Pittsburgh. ECF No. 321 at 15. Leopold correctly argues that those costs are non-compensable in this case. ECF No. 324 at 10; *see Interfaith Cmty.*, 426 F.3d at 710 ("[A] party that hires counsel from outside the forum of the litigation may not be compensated for . . . [counsel's] travel costs" unless local counsel was unwilling to represent that party). Accordingly, the Court will deduct SLG's travel costs, and award SLG $2,255.96 in costs.

### IV. Conclusion

For the foregoing reasons, Mr. McDonough's Motion for Costs and Attorneys' Fees, ECF No. 330, will be GRANTED IN PART, as follows:

1. Mr. McDonough will be awarded $464,335.95 in attorneys' fees.
2. Mr. McDonough will be awarded $2,255.96 in costs.

DATED this 17th day of September, 2025.

                                        BY THE COURT:

                                        <u>/s/ Christy Criswell Wiegand</u>
                                        CHRISTY CRISWELL WIEGAND
                                        United States District Judge

cc (via ECF email notification):

All Counsel of Record